UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00077-TBR

GLORIA TASSY, *individually and on behalf of all similarly situated*,                           Plaintiff,

v.

LINDSAY ENTERTAINMENT
ENTERPRISES, INC.,                                                                              Defendant.

### MEMORANDUM OPINION AND ORDER

Gloria Tassy, individually and on behalf of all other similarly-situated persons, filed this action against Lindsay Entertainment Enterprises, Inc. in an effort to recover unpaid minimum wages, a violation of the Fair Labor Standards Act of 1938 (FLSA), ch. 676, § 6(a), 52 Stat. 1060, 1062–63 (codified as amended at 29 U.S.C. § 206(a)).  Now, Lindsay Entertainment Enterprises seeks to stay these proceedings pending arbitration pursuant to the parties' written agreement and the Federal Arbitration Act (FAA), 9 U.S.C. § 3.  Because there are disputed questions of fact concerning the formation of that agreement, however, the Court **SHALL** hold an evidentiary hearing before resolving Lindsay Entertainment Enterprises' request.

### I.

### A.

Lindsay Entertainment Enterprises, Inc. operates The Godfather, a gentleman's club in Louisville, Kentucky.  R. 1 at 1, ¶¶ 1–2 (Complaint).  The Godfather employees a number people, including "wait staff, bartenders, security personnel and kitchen staff," to provide food, drink, and music to its patrons "in an adult setting."  R. 9-2 at 1, ¶ 2 (Lindsay's Declaration); *see also* R. 1 at 3, ¶¶ 27–28.  The "main attraction" at The

Godfather, though, remains its many "dancers," R. 1 at 3, ¶ 29, among them Gloria "Mia" Tassy, *id.* at 1, ¶¶ 1–3.

Tassy worked as a dancer at The Godfather from May 2014 to January 2016. *Id.* During that time, she says, Lindsay Entertainment Enterprises never paid her a "direct wage." *Id.*, ¶ 5. Instead, she and other dancers worked for tips, *id.*, ¶ 6, less Lindsay Entertainment Enterprises' cut, *id.* at 1, 4, ¶¶ 7, 35.

While Tassy considered herself to be an employee at The Godfather, *see id.* at 2, ¶ 16, Lindsay Entertainment Enterprises classified her and other dancers as independent contractors, *see* R. 9-2 at 1, ¶ 3. According to Douglas "Scott" Lindsay, the President and Chief Executive Officer of Lindsay Entertainment Enterprises, *id.*, ¶ 1, dancers "lease" space at The Godfather "to offer personal dances, entertainment and personal conversations to individual customers," *id.*, ¶ 3. In exchange for that access, dancers pay a fee to Lindsay Entertainment Enterprises. *Id.*

Lindsay Entertainment Enterprises requires, without exception, all dancers to sign a preprinted Entertainment Lease to that effect. *See id.* at 2, ¶ 4. The Entertainment Lease includes, in pertinent part, the following provision:

> **EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY BARRED BY THIS PARAGRAPH, ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF THIS LEASE OR RELATING IN ANY WAY TO ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM"), WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY <u>BINDING ARBITRATION</u> HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "F.A.A."). . . . <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY</u>.** . . .

> **ENTERTAINER AND THE CLUB AGREE THAT ANY AND ALL CLAIMS SHALL BE BROUGHT AND MAINTAINED INDIVIDUALLY; THAT THEY WILL NOT CONSOLIDATE THEIR CLAIMS WITH THOSE OF ANY OTHER PERSON OR ENTITY, THAT THEY WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM; AND THAT THEY WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE OTHER.**

*Id.* at 7, ¶ 21.A–B (Entertainment Lease). "If [a dancer] does not want to agree" to the Entertainment Lease, Scott Lindsay says, "she is free to do so, but she is not allowed to provide personal entertainment at [The Godfather]." *Id.* at 2, ¶ 5; *see also* R. 13-1 at 1–2, ¶ 3 (Sloss's Declaration).

It unclear, however, whether Tassy signed a copy of the Entertainment Lease during her time at The Godfather. Scott Lindsay and Tammy Sloss, a waitress (and former dancer), claim to have witnessed her sign the Entertainment Lease, *see* R. 9-2 at 2, ¶ 5; R. 13-1 at 1-2, ¶¶ 1–2, 5, but Tassy has denied ever seeing or receiving a copy of the Entertainment Lease prior to bringing this action, *see* R. 17-1 at 3, ¶¶ 22–24 (Tassy's Declaration). Lindsay Entertainment Enterprises concedes its inability to produce an executed copy. *See* R. 13 at 4 (Reply in Support of Motion for Stay Pending Arbitration).

### B.

Gloria Tassy, on behalf of herself and all others similarly situated, filed this action against Lindsay Entertainment Enterprises, Inc. seeking to recover unpaid minimum wages, a violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 206(a). *See* R. 1 at 1, ¶ 1. She asks the Court to conditionally certify a class of current and former dancers who worked at The Godfather, to approve notice to advise putative class members of their rights under the FLSA, and to furnish them an opportunity to opt-in to this action pursuant to 29 U.S.C. § 216(b). *See* R. 5 at 17–18 (Motion for Conditional

Certification and Notice). In lieu of a response to Tassy's motion, Lindsay Entertainment Enterprises seeks to stay this proceeding pending arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 3. *See* R. 9 at 1 (Motion for Stay Pending Arbitration).

## II.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Under the Act, a written agreement to arbitrate disputes arising out of a contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There are "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Before granting a stay under 9 U.S.C. § 3, the Court "must engage in a limited review to determine whether the dispute is arbitrable," meaning "[1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). In performing its task, the Court approaches factual questions as it would at the summary

4

judgment stage. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015). If the Court is satisfied that the parties formed a valid agreement to arbitrate, it must stay litigation involving such a dispute until the parties resolve it in the contracted-for manner. *See* 9 U.S.C. § 3. If there are disputed questions of fact concerning the formation of such an agreement, then the Court should hold an evidentiary hearing to resolve the question. *See Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 425 (S.D.N.Y. 1978); *Marshall v. Green Giant Co.*, No. 4-83-578, 1985 WL 2458, at *2–3 (D. Minn. Aug. 7, 1985); *cf. Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 340 (5th Cir. 1984) (holding no evidentiary hearing to be necessary in the absence of "disputed factual questions going to the legal issue of arbitrability").

### III.

In this case, there is no dispute about the scope of the arbitration provision. Instead, the principal issue is whether a valid agreement to arbitrate exists in the first place.[1] Because arbitration agreements are, in essence, contracts, Kentucky law guides the Court's inquiry into the question of contract formation. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *Seawright*, 507 F.3d at 972. In Kentucky, like in all jurisdictions, a contract is enforceable only if both parties agree to be bound by it. *See Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451, 456 (Ky. 2009) (citing *Courtney Shoe Co. v. E.W. Curd & Son*, 134 S.W. 146 (Ky. 1911); *Henry Clay Fire Ins. v. Denker's Ex'x*, 290

---

[1] Gloria Tassy makes two other alternative arguments. First, she asserts that the unexecuted Entertainment Lease (including the arbitration clause) is unenforceable in light of Kentucky's codification of the Statute of Frauds, Ky. Rev. Stat. § 371.010. *See* R. 10 at 5–6 (Response to Motion for Stay Pending Arbitration). Second, she stresses that the arbitration provision in the Entertainment Lease is illegal since it prohibits an arbitrator from presiding over a collective action. *See* R. 21 at 4–5 (Response to Motion to Strike) (discussing *Lewis v. Epic Sys. Corp.*, ⎯⎯ F.3d ⎯⎯, 2016 WL 3029464 (7th Cir. 2016)). Because both points depend upon whether Tassy manifested her assent to the Entertainment Lease, the Court reserves passing judgment on them for another day.

S.W. 1047 (Ky. 1927)). Typically, contracting parties "manifest their agreement by signing the contract." *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 726 (W.D. Ky. 2014). Yet, Kentucky courts will still enforce "unsigned arbitration agreements where the parties have indicated acceptance of the contract through their actions." *Id.* (quoting *Polly v. Affiliated Comput. Servs., Inc.*, No. 10-135-ART, 2011 WL 93715, at *2 (E.D. Ky. Jan. 11, 2011)).

Here, Tassy maintains, in essence, that she never signed the Entertainment Lease or otherwise agreed to arbitrate any dispute with Lindsay Entertainment Enterprises. *See* R. 10 at 2, 5–6 (Response to Motion for Stay Pending Arbitration); R. 17 at 1 (Demand for Jury Trial); R. 21 at 4 (Response to Motion to Strike). According to Lindsay Entertainment Enterprises, though, Tassy indicated her acceptance of the Entertainment Lease as a matter of law by her signature and through her conduct. *See* R. 9-1 at 6 (Memorandum in Support of Motion for Stay Pending Arbitration); R. 13 at 2–4; R. 18 at 3–5 (Motion to Strike). Viewing the sparse record in the light most favorable to Tassy, the Court finds a genuine dispute of material fact concerning whether Tassy manifested her assent to the Entertainment Lease and its arbitration provision. Accordingly, the Court must conduct an evidentiary hearing before resolving Lindsay Entertainment Enterprises' motion.

### A.

Contrary to Lindsay Entertainment Enterprises' suggestion, *see* R. 13 at 3, it is far from undisputed that Tassy signed the Entertainment Lease. The copy of the Entertainment Lease attached to Lindsay Entertainment Enterprises' papers is not signed by Tassy or, for that matter, by a representative of Lindsay Entertainment Enterprises,

6

despite the presence of blank "signature blocks" for both. *See* R. 9-2 at 9. Though Lindsay Entertainment Enterprises concedes that no executed copy of the Entertainment Lease is still around, *see* R. 13 at 4, it offers no further explanation on that point. The omission is at least "curious, seeing as it 'is the custodian of such records.'" *Stearman v. Ferro Coals, Inc.*, No. 3:15-CV-31-DJH-DW, 2015 U.S. Dist. LEXIS 121768, at *7 (W.D. Ky. Sept. 14, 2015); *see also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1303–05 (M.D. Ga. 2003) (observing that such contracts "should be a part of the [d]efendant['s] business records and contain a valid signature").

The closest Lindsay Entertainment Enterprises comes to demonstrating Tassy's assent is through the sworn statements of Scott Lindsay and Tammy Sloss, each of whom claim to have witnessed her execute the Entertainment Lease in May 2014. *See* R. 9-2 at 2, ¶ 6; R. 13-1 at 2, ¶ 5. Yet, Tassy swears she had not seen or received a copy of the Entertainment Lease prior to bringing this action. *See* R. 17-1 at 3, ¶¶ 23–24. Though she has not *explicitly* denied signing the Entertainment Lease, *see* R. 18 at 3–5, viewing the record in the light most favorable to her, such is a reasonable inference to draw. In short, Tassy's unequivocal denial raises a genuine issue of material fact as to whether she signed the Entertainment Lease. *See Braxton*, 1 F. Supp. 3d at 727.

B.

Even without a signature, though, Lindsay Entertainment Enterprises argues that Tassy's actions signal her assent to the Entertainment Lease and its arbitration provision. *See* R. 13 at 3–4; R. 18 at 4–5. To be sure, parties can bind themselves to a contract, even absent a signature, through actions indicating acceptance of the contract's terms. *See Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 9 (Ky. 2006); *Braxton*, 1 F. Supp. 3d at 727–

7

28; *Aldrich v. Univ. of Phoenix, Inc.*, No. 3:15-CV-00578-JHM, 2016 WL 915287, at *9–10 (W.D. Ky. Mar. 4, 2016), *appeal docketed*, No. 16-5276 (6th Cir. Mar. 10, 2016). The question, therefore, becomes whether Tassy's conduct evidenced her acceptance of the Entertainment Lease. The record reveals no conclusive answer.

There is no dispute that Tassy performed at The Godfather. *See* R. 1 at 1, ¶ 3. True enough, Scott Lindsay testified that, "without exception," all dancers must sign the Entertainment Lease as a precondition to providing "personal entertainment" services there, R. 9-2 at 2, ¶¶ 4–5, a practice Tammy Sloss confirmed too, *see* R. 13-1 at 1–2, ¶ 3. It is possible, then, that by performing at The Godfather, Tassy acted in such a way as to signal her assent to the terms of the Entertainment Lease. *See* R. 9-2 at 2, ¶ 7. Yet, Tassy has denied ever seeing or receiving a copy of, or being advised about, the Entertainment Lease prior to bringing this action. R. 17-1 at 3, ¶¶ 23–24. It is also possible, then, that Tassy merely performed at the Godfather without knowing about the Entertainment Lease at all. In these circumstances, there is a genuine issue of material fact as to whether Tassy manifested acceptance of the Entertainment Lease and its arbitration provision through her conduct too.[2]

---

[2] None of the authorities upon which Lindsay Entertainment Enterprises relies, *see* R. 13 at 4 (Reply in Support of Motion for Stay Pending Arbitration); R. 18 at 4–5 (Motion to Strike), are to the contrary. Take, for example, *Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277 (N.D. Ga. 2008). There, a subscriber filed suit against a cable television provider to resolve a billing dispute. *Id.* at 1280. The provider sought to resolve the squabble through arbitration as allowed under its subscriber agreement. *Id.* at 1282. The subscriber denied agreeing to arbitrate, however, since she could not *remember* receiving a copy of the agreement. *Id.* at 1283. But the subscriber came forward with nothing (not even an affidavit or declaration) to support her story, and the provider introduced a signed work order where the subscriber acknowledged receipt of the agreement. *Id.* Faced with uncontroverted evidence of receipt, the district court held the subscriber's continued use of the provider's services manifested her assent to the agreement and the arbitration clause. *Id.* at 1283–84.

*Honig* bears little resemblance this case. Unlike the subscriber in *Honig*, Tassy has denied, in a sworn declaration, ever seeing or receiving a copy of, or being advised about, the Entertainment Lease prior to filing this action. R. 17-1 at 3, ¶¶ 23–24 (Tassy's Declaration). Consequently, her declaration is not, as Lindsay Entertainment Enterprises would suggest, a "bald conclusory assertion that she did not agree to

## C.

Though Tassy maintains that a jury trial must be held to resolve any questions of fact surrounding the issue of contract formation, *see* R. 17 at 1; R. 21 at 4, she is mistaken. Unlike a motion to compel arbitration under 9 U.S.C. § 4, a motion to stay proceedings pending arbitration under 9 U.S.C. § 3 affords no right to a jury trial. *See Oasis Oil & Ref. Corp. v. Armada Transp. & Ref. Co.*, 719 F.2d 124, 126 (5th Cir. 1983); *J & R Sportswear & Co. v. Bobbie Brooks, Inc.*, 611 F.2d 29, 30 (3d Cir. 1979); *Griffen v. Alpha Phi Alpha, Inc.*, No. 06-1735, 2007 WL 707364, at *3 n.7 (E.D. Pa. Mar. 2, 2007); *Marshall*, 1985 WL 2458, at *2–3; *see also Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 837–74 (7th Cir. 1985) (Posner, J.). The plain language of 9 U.S.C. § 3 refers to the Court "the decision on an application for a stay." *J & R Sportswear & Co.*, 611 F.2d at 30. "By means of an evidentiary hearing," then, the Court will pass on any disputed questions of fact necessary to resolve Lindsay Entertainment Enterprises' motion. *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1027 (7th Cir. 2002); *see also Todd*, 78 F.R.D. at 425; *Ventimiglia v. Gruntal & Co.*, No. 88 CIV. 1675 (RJW), 1989 WL 251402, at *7 (S.D.N.Y. Nov. 1, 1989); *Marshall*, 1985 WL 2458, at *2–3.

## VI.

**IT IS HEREBY ORDERED** that a Telephonic Scheduling Conference regarding Lindsay Entertainment Enterprises, Inc.'s Motion to Stay Proceeding Pending Arbitration, R. 9, is **SET** for **July 22, 2016 at 10:30 a.m. EST**. The Court shall place the call.

---

arbitrate based solely on her failure to remember" signing the Entertainment Lease "insufficient" to create a question of fact. R. 18 at 5.

9

10

**IT IS FURTHER ORDERED** that Lindsay Entertainment Enterprises, Inc.'s Motion to Strike, R. 18, is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc: Counsel of Record