UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GLORIA TASSY, individually & on behalf of             Plaintiffs
all similarly situated,

v.                                                    Civil Action No. 3:16-cv-77-RGJ

LINDSAY ENTERTAINMENT                                 Defendant
ENTERPRISES, INC.,

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Gloria Tassy ("Tassy") and all similarly situated plaintiffs (together the "Plaintiffs"), moved for partial summary judgment [DE 120-1]. Lindsay Entertainment Enterprises, Inc. ("Defendant") opposed [DE 124-1] and Plaintiffs replied [DE 125]. Defendant has also moved to decertify Plaintiffs' class [DE 121-2] and Plaintiffs have responded in opposition [DE 123]. Defendant failed to reply and the time for doing so has passed. Briefing is complete, and the matter is ripe. For the reasons below, the Court **DENIES** Defendant's Motion to Decertify the Class [DE 121-2] and **GRANTS** Plaintiffs' Motion for Partial Summary Judgment [DE 120-1].

I.   **BACKGROUND**

Defendant owned and operated an adult night club called The Godfather in Louisville, Kentucky. [DE 120-1 at 588]. The Godfather is a night club that features exotic female dancers known as entertainers. [*Id.*]. Plaintiffs worked for Defendant at The Godfather as entertainers from May 2014 through January 2016. [DE 1 at 1–2]. The entertainers' primary duties were to perform dances at designated areas in The Godfather at prices set by Defendant. [DE 102-1 at 589]. Defendant made money through the sale of food, alcohol, admission, and rent charged to the entertainers. [*Id.*]. At the time in question, Defendant charged entertainers rent for all couch

1

dances and VIP performances. [*Id.*]. Defendant characterized Plaintiffs and other entertainers as independent contractors and did not pay them a direct wage. Plaintiffs did receive commission on a portion of drink sales that were credited to Plaintiffs each week. [*Id.*]. When a patron purchased a drink for an entertainer, the entertainer would receive commission for that sale. [*Id.*]. Plaintiffs claim that Defendant paid them well below minimum wage even after commissions earned on drink sales were calculated into their pay. [*Id.*]. Other than drink commissions the only other income for entertainers consisted of tips received from Defendant's patrons. [*Id.* at 593].

Although contested by Defendant, Plaintiffs claim Defendant scheduled the days and times of each shift that entertainers were required to work. [*Id.* at 590]. Plaintiffs were also required to clock in and out for each shift. [*Id.*]. After clocking in at The Godfather, entertainers were required to pay Defendant a house fee of $25 per shift. [*Id.* at 590–91]. Entertainers were subject to fines for arriving late, failing to work a scheduled shift, or leaving early. [*Id.*]. Entertainers would typically learn they had been fined when their commission from drink sales turned up short. [*Id.* at 593]. Defendant required entertainers to wear at least three pieces of clothing, including heels, and had authority to determine whether entertainers' outfits were suitable. [DE 124-1 at 797–98]. Notably, entertainers supplied their own apparel and makeup. [DE 102-1 at 594]. An entertainer was required to perform on stage at The Godfather when her name was called. [*Id.* at 591]. While on stage, entertainers would receive tips, which they could keep, but entertainers were not always allowed to pick the song. [*Id.*]. At the conclusion of their shift, entertainers would tip the bartenders, DJs, and doormen as designated in the entertainers' job application paperwork.[1] Defendant also required entertainers to accept drinks from patrons and maintained discretion to

---

[1] Plaintiffs claim that Defendant required them to "tip out" these individuals and that this requirement was explained in their job application paperwork. [*Id.* at 592]. Defendant contests this fact and alleges that no entertainers were required to tip other employees at The Godfather. [DE 124-1 at 799].

enforce this rule. [DE 102-1 at 591]. Entertainers were subject to a noncompete which prohibited them from dancing at any other club in Louisville while working at The Godfather. [*Id.*]. However, entertainers could dance at other clubs outside of Louisville. [DE 124-1 at 800].

The Godfather maintained ultimate control over the Business. The Godfather was responsible for advertising and marketing the entertainers' services. [DE 102-1 at 593]. The Godfather employed bartenders, servers, security, DJs, and a door man. [*Id.*]. It also paid the utilities and provided the facility. [*Id.* at 594]. Defendant did not require any previous experience or specialized training for entertainers to work at The Godfather, but they were required to audition if they lacked the appropriate experience. [*Id.*]. Plaintiffs were hired on a "day-to-day" basis and all of them signed independent contractor agreements. [DE 124-1 at 802]. However, entertainers like Plaintiffs were integral to Defendant's business as an adult entertainment club. [DE 102-1 at 594].

Tassy filed suit against Defendant pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"). [DE 1 at 1]. Tassy alleged that Defendant violated 29 U.S.C. § 203 and failed to pay Tassy a minimum wage pursuant to 29 U.S.C. § 206. [*Id.* at 2–3]. On March 28, 2017, the Court granted Tassy's motion for conditional class certification so this action could proceed collectively on behalf of all Plaintiffs. [DE 38]. A total of six additional dancers joined Tassy's class. [DE 121-2 at 757]. Defendant now moves to decertify the class based on the limited number of class members. [*Id.* at 756]. Plaintiffs also move for partial summary judgement on their claims under the FLSA. [DE 120-1].

## II. DEFENDANT'S MOTION TO DECERTIFY PLAINTIFFS' CONDITIONALLY FORMED CLASS

Defendant moves to decertify Plaintiffs' conditionally formed class. [DE 121-2 at 756]. Defendant argues that Plaintiffs have failed to meet the numerosity requirement under Federal

Rule of Civil Procedure 23(a)(1) and that the merits of the case do not support maintenance of a class action. [*Id.* at 1–3].

### A. Standard of Review

To proceed collectively under the FLSA, plaintiffs must be similarly situated. 29 U.S.C. § 216(b); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). As a result, the "lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien*, 575 F.3d at 583. "Unlike class actions under Fed. R. Civ. P. 23, collective actions under the FLSA require putative class members to opt into the class." *Id.* at 583; *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Courts have consistently held that even named plaintiffs in collective actions must file consents. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675–76 (6th Cir. 2012) ("courts construe the above language to do what it says: require a named plaintiff in a collective action to file a written consent to join the collective action."); *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent. The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case . . . [w]e are inclined to interpret the statute literally."); *In re Food Lion, Inc.*, Nos. 94-2360, 97-1443, 97-1444, 94-2645, 95-1274, 1998 WL 322682, at *13 (4th Cir. June 4, 1998) ("'Until a plaintiff, even a named plaintiff, has filed a written consent, []he has not joined the class action, at least for statute of limitations purposes.'").

4

### B. Analysis

Defendant first argues that Plaintiffs have failed to meet the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). [DE 121-2 at 756]. Plaintiffs contend that Rule 23 is inapplicable, and that Plaintiffs have met the requirements under 29 U.S.C. § 216(b). [DE 123 at 783]. The Court agrees with Plaintiffs that Rule 23 is not applicable to this proceeding. The Court entered an order conditionally certifying Plaintiffs' class under 29 U.S.C. § 216(b). [DE 38]. "A FLSA collective action differs from a class action brought under Federal Rule of Civil Procedure 23." *Bassett v. Tenn. Valley Auth.*, No 5:09-CV-00039, 2013 WL 665068, at *2 (citing *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006)). Therefore, the Court must examine the class under § 216(b) instead of Rule 23. *See Bassett*, 2013 WL 665068, at *2.

Other than Tassy, six additional plaintiffs have opted into the putative class and filed the required written consents. [DE 121-2 at 756]. Under § 216(b), the Plaintiffs do not need to prove numerosity or likelihood of success on the underlying claims, but Plaintiffs must show that they are similarly situated. *O'Brien*, 575 F.3d at 583. During the time in question, all Plaintiffs held the same position and performed the same duties. [DE 123 at 786]. Plaintiffs were compensated in the same manner and have the same claims for unpaid minimum wages. [*Id.*]. Moreover, Defendant uniformly classified Plaintiffs as independent contractors. [*Id.*]. Tassy has carried her burden by presenting evidence that all Plaintiffs are similarly situated. *O'Brien*, 575 F.3d at 583. Defendant's Motion to Decertify the Class [DE 121-2] is **DENIED**.

### III.     PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs move for summary judgment on their FLSA claim against Defendant. [DE 120-1 at 588]. First, Plaintiffs argue that they are considered employees under the FLSA. [*Id.* at 596]. Second, Plaintiffs claim that Defendant's FLSA violations were willful such that the statute of

5

limitations applicable to Plaintiffs' claims is three years. [*Id.* at 605]. Finally, Plaintiffs claim they are entitled to mandatory liquidated damages because Defendant fails to demonstrate the requisite "good faith." [*Id.* at 20–21].

### A. Standard of Review

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### B. Analysis

#### 1. Plaintiffs' Employee Status Under the FLSA.

Plaintiffs claim that they were employees and not independent contractors when they worked at The Godfather. [DE 120-1 at 596]. Defendant argues that the Court may not grant summary judgment because many of the relevant facts are in dispute. [DE 124-1 at 793]. Defendant has stipulated that it is an enterprise subject to coverage under the FLSA. [DE 120-2 at 618, Lindsay Dep. 33:2–14].

Because FLSA coverage is established, the Court must assess whether Plaintiffs were independent contractors or employees, as the FLSA only applies to employees. *See Gilbo v. Agment, LLC*, 831 F. App'x 772, 775 (6th Cir. 2020). "Whether a FLSA plaintiff is an employee is a mixed question of law and fact." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n. 1 (6th Cir. 1992)). To determine whether a worker should be classified as an employee or an independent contractor, the Sixth Circuit conducts an "economic reality" test. *See Keller*, 781 F.3d at 807. The Court must analyze and balance the following six factors:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; ... 5) the degree of the alleged employer's right to control the manner in which the work is performed[; ... and 6)] whether the service rendered is an integral part of the alleged employer's business.

*Id.* (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1117 & n. 5 (6th Cir. 1984)). When balancing these six factors, the Court must consider the FLSA's "strikingly broad" definition of "employee," *id.* at 804, and remember the law's "'remedial and humanitarian' purpose." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017) (quoting *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002)).

### a. Permanency of the Relationship

The first factor of the economic reality test examines the "length and regularity of the working relationship between the parties." *Keller,* 781 F.3d at 807. Independent contractors "often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and indefinite in duration." *Id.*

While other courts may have made this generalization, Plaintiffs were not transient workers. Tassy, the lead plaintiff, worked at The Godfather from May 2014 through January 2016, a period of almost two years. [DE 1 at 1–2]. This is a significant period in comparison to similar Sixth Circuit cases. *See, e.g.*, *Gilbo*, 831 F. App'x at 776 (finding "employee" status where exotic dancers had worked no more than one year); *Lester v. Agment LLC*, No. 1:15-CV-886, 2016 WL 1588654, at *5 (N.D. Oh. Apr. 20, 2016) (holding plaintiffs were "employees" although they worked for no more than 30 days). Moreover, Plaintiffs were subject to a noncompete and worked exclusively at The Godfather. [DE 102-1 at 591]. This factor focuses not just on length, but also exclusivity. *See Gilbo*, 831 F. App'x at 776. Even shorter, exclusive relationships between the worker and company may be indicative of an employee-employer relationship. *See Keller*, 781 F.3d at 807. Because Plaintiffs worked exclusively at The Godfather for a longer period of time, a reasonable juror could only conclude that this factor weighs heavily in favor of Plaintiffs.

### b. Degree of Skill

This factor assesses the complexity of the work performed, how the worker acquired their skill, and the length of the worker's training period. *See Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055–56 (6th Cir. 2019). Less complex work and a lower degree of skill is indicative of an employer-employee relationship. *See id.* at 1056. Plaintiffs assert that an entertainer's job requires almost no skill or specialization. [DE 120-1 at 594]. Entertainers were not required to have experience in adult dancing or formal training to work at The Godfather. [*Id.*]. However, entertainers were required to audition if they did not have previous experience. [*Id.*]. Defendant argues that providing services as an entertainer requires skill "similar to singing or playing an instrument." [DE 124-1 at 806]. However, this is contrary to Defendant's deposition testimony. Defendant testified that the purpose of the audition was to ensure that entertainers did not have offensive tattoos or evidence of drug use, not to gauge the entertainer's skill. [DE 120-2 at 640–42, Lindsay Dep. 86:7–88:14]. Defendant also testified that it provided entertainers with no additional training after starting work at The Godfather. [*Id.* at 642]. Because the complexity of the work as an entertainer was low and Defendant provided no additional training, a reasonable juror could only conclude that this factor weighs in favor of Plaintiffs.

### c. Investment in Specialized Equipment

This factor compares the Plaintiffs' investment in the company to "the company's total investment, including office rental space, advertising, software, phone systems, or insurance," and "is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered." *Keller*, 781 F.3d at 810 (quoting *Brandel*, 736 F.2d at 1119). A smaller investment from the entertainers compared to an outsized investment by the club owner would indicate an employer-employee relationship. *See Gilbo*, 831 F. App'x at 777. In

similar cases concerning entertainers at adult clubs, "nearly every other court has found . . . that the third factor points towards an employer-employee relationship." *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1376 (N.D. Ga. 2019).

Defendant points to the Plaintiffs' investments in their bodies and their ability to operate their bodies as tools they have mastered as entertainers. [DE 124-1 at 806]. However, Defendant has failed to provide evidence related to their argument. Plaintiffs counter that their investment was limited to their own apparel and makeup. [DE 120-1 at 594]. This pales in comparison to Defendant's annual investment in The Godfather, which exceeded $100,000 in rent alone. [*Id.* at 602]. Comparing Defendant's expenses with Plaintiffs', the Court holds, as nearly every other court, that the third factor weighs in Plaintiffs' favor. *See, e.g.*, *Gilbo*, 831 F. App'x at 777 (holding proceeds from dances paid to the club owner was not a substantial investment from entertainers); *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 328 (5th Cir. 1993) ("A dancer's investment in costumes and a padlock is relatively minor to the considerable investment [the club's owner] has in operating a nightclub."); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1350 (M.D. Fla. 1997) ("The courts which have addressed this factor have universally concluded that a dancer's investment is minor when compared to the club's investment."); *Hanson v. Trop, Inc.*, 167 F. Supp. 3d 1324, 1332 (N.D. Ga. 2016) (finding dancer's investment in clothing, makeup and costumes minuscule when compared to defendant's investment in adult club). Based on the evidence provided, no reasonable juror could conclude Plaintiffs' investment outsized Defendant's. This factor weighs heavily in favor of Plaintiffs.

### d. Opportunities for Profit or Loss

This factor examines whether workers have "opportunit[ies] for greater profits based on [their] management and technical skills." *Keller*, 781 F.3d at 812. One example would be a worker

who can "improve his efficiency such that he c[an] complete more" jobs per day. *Id.* at 813. Drawing patrons to The Godfather is "the critical factor in determining the profits and losses" of all involved in the business. *See Lester*, 2016 WL 1588654, at *6; *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 920 (S.D.N.Y. 2013). A lesser opportunity for profit or loss would weigh in Plaintiffs' favor for employee status under the FLSA. *See Lester*, 2016 WL 1588654, at *6.

Defendant argues that the way entertainers interact with patrons largely determines how much money an entertainer can make. [DE 124-1 at 806–807]. Defendant also claims that drawing customers to the club is primarily influenced by the "attractiveness, friendliness and flirtatious sexual appeal of the dancers themselves." [*Id.* at 807]. Plaintiffs contend that The Godfather controlled the majority of factors contributing to profit or loss. [DE 120-1 at 601]. Defendant is responsible for advertising and marketing through its website, social media accounts, radio, and print advertising. [*Id.* at 593]. There was no expectation that entertainers pay for advertising. [*Id.*]. The Sixth Circuit has rejected Defendant's argument that an entertainer's ability to interact with customers gives them an opportunity for profit or loss. *See Gilbo*, 831 F. App'x at 777 (holding courts have uniformly rejected the argument that "a dancer's ability to 'hustle' for more customers gives the dancers significant opportunity for profit or loss").

Defendant's second argument is mooted by the fact that The Godfather maintained the responsibility for drawing patrons to The Godfather through marketing and advertising the entertainers' services. [DE 120-1 at 593]. Without advertisements and marketing, patrons would be unaware of the entertainers' attributes at The Godfather. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) ("The club controls all of the advertising, without which the entertainers could not survive."). Ultimately, what a dancer earns is "limited by the bounds of good service"

and the nightclub itself "takes the risks and reaps the returns." *Thompson v. Linda & A. Inc.*, 779 F. Supp. 2d 139, 149 (D.D.C. 2011). Even viewing the evidence in the light most favorable to Defendant, a reasonable juror could only conclude that Defendant's opportunity for profit and risk of loss was much greater than Plaintiffs'. This factor weighs in Plaintiffs' favor.

        e. *Degree of Control*

  This factor focuses on the degree of control the employer has over its workers, as well as whether the employer "'retains the right to dictate the manner' of the worker's performance." *Off Duty Police*, 915 F.3d at 1060 (quoting *Brandel*, 736 F.2d at 1119). When weighing this factor, courts examine uniform requirements, general rules on workplace conduct, control over who could enter the building, and control over customers. *See id.* A greater degree of control exercised by Defendant would weigh in favor of an employer-employee relationship. *See Lester*, 2016 WL 1588654, at *7.

  Plaintiffs claim that Defendant exercised immense control over their work. [DE 120-1 at 598]. Defendant argues that clubs like The Godfather are highly regulated, so it must establish and enforce certain rules. [DE 124-1 at 807]. Defendant admits that entertainers were required to pay a house fee to use The Godfather's stage and amenities. [*Id.* at 797]. Defendant set minimum prices for dances and kept a portion of the proceeds. [*Id.* at 808]. Defendant also had rules regarding the entertainers' apparel, plus the requirement that entertainers wear three pieces of clothing including high heels. [*Id.* at 797]. Entertainers were required to dance on stage when their name was called and did not always get to pick the song. [*Id.* at 798]. Defendant also had rules requiring entertainers to accept drinks from patrons, prohibiting entertainers from leaving The Godfather while working, and not permitting outside alcohol. [*Id.* at 799]. Violating any of these policies or being late for a shift resulted in fines. [*Id.* at 800]. Defendant disputes Plaintiffs'

claim that they were required to work weekends. [*Id.* at 807]. However, Defendant concedes that to work weekends (the most lucrative time for entertainers), Plaintiffs were required to work one or two nights during the week. [*Id.* at 808].

Viewing the evidence in the light most favorable to the Defendant, some of the underlying facts relevant to this factor are in dispute. Particularly whether Plaintiffs were required to work weekends, whether Plaintiffs were required to "tip out" the other employees, and whether Defendant set Plaintiffs' work schedule. However, on balance, the Court finds that this factor weighs in Plaintiffs' favor.

Defendant exercises substantial control over its entertainers. "The presence of club-imposed written and unwritten guidelines for dancers' conduct indicate control and weighs in favor of employee status." *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, *6 (E.D. Pa. June 30, 2014). As is the case here, Defendant admits that entertainers were subject to certain rules while working at The Godfather. [DE 124-1 at 807]. The presence of these rules and the imposition of punishments such as fines demonstrate a degree of control over the entertainers. *See Hart*, 967 F. Supp. 2d at 918. Although Defendant did not require uniforms, Defendant exerted control over the entertainers' attire by requiring them to wear three pieces of clothes, including high heels. *See Off Duty Police*, 915 F.3d at 1060. The Sixth Circuit has found this factor to weigh in favor of the entertainers under similar circumstances. *See Gilbo*, 831 F. App'x at 777–78 (finding substantial control where the club enforces a dress code, controls the rates for dances, and keeps a portion of tips). A reasonable juror could only conclude that Defendant exercised significant control over entertainers. This factor weighs in favor of Plaintiffs.

### f. *Integral Part of the Business*

This factor asks whether the workers provide services that are integral to the employer's business. "The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Keller*, 781 F.3d at 815. Defendant argues that there is a genuine issue of material fact regarding this factor. [DE 124-1 at 809]. Defendant concedes, however, that it would be seeking a much different clientele without its entertainers. [*Id.*]. Like other jurisdictions, the Court does not find Defendant's argument persuasive. *See, e.g.*, *Lester*, 2016 WL 1588654, at *7. Defendant operates The Godfather, which is an adult entertainment club. [DE 120-1 at 588]. No reasonable juror could conclude that an adult entertainment club could continue doing business as such without entertainers who provide the adult entertainment. This factor weighs in favor of Plaintiffs.

### g. *Consideration of All Factors*

Even after construing the facts in the light most favorable to the Defendant, the Court concludes that Plaintiffs were employees for purposes of the FLSA. As noted above, all factors of the economic realities test weigh in favor of Plaintiffs. Plaintiffs were exclusively employed by The Godfather for a considerable time; entertainers had no specialized skills; they had a small investment in their position compared to Defendant; Defendant's opportunity for profit and risk of loss was much greater than Plaintiffs'; Defendant exercised significant control over entertainers; and entertainers were integral to the success of The Godfather. A reasonable juror could only conclude that the totality of the circumstances shows as a matter of economic reality that Plaintiffs were employees of The Godfather. Plaintiffs' Motion for Partial Summary Judgment [DE 120-1] regarding Plaintiffs' status as employees under the FLSA is **GRANTED.**

### 2. Applicable Statute of Limitations.

Plaintiffs argue that their claims are subject to a three-year statute of limitations because of Defendant's willful disregard of the FLSA. [DE 120-1 at 605]. The statute of limitations under the FLSA is two years unless there is proof of a willful violation of the statute. 29 U.S.C. § 255(a). If a willful violation is shown, the statute of limitations extends to three (3) years. *Id.* A violation of the FLSA is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 (1988). This standard requires "more than a showing of negligence on the employer's part." *Id.* A violation will be deemed "in reckless disregard . . . if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1314 (N.D. Ga. 2008) (quoting 29 C.F.R. § 578.3(c)(3)). The burden is on the employee to prove by a preponderance of the evidence that her employer acted willfully. *See Davila v. Menendez*, 717 F.3d 1179, 1185 (11th Cir. 2013). Defendant failed to respond to Plaintiffs' allegation of a willful violation of the FLSA and request for a three-year statute of limitations. [DE 124-1]. Although the Court will address the merits of Plaintiffs' claim, Defendant has conceded that the three-year statute of limitation applies by failing to respond. *See Keys v. Dart Container Corp. of Ky.*, No. 1:08-CV-00138-JHM, 2012 WL 2681461, at *7 (W.D. Ky. July 6, 2012) (citing *Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 948 (W.D. Mich. 2009)).

Defendant acknowledges that it paid minimum wage to its servers and bartenders even though they also received tips. [DE 120-1 at 605–606]. Defendant also belongs to a trade association that frequently updates its members on legal developments, including the status of entertainers as employees [*Id.* at 606]. Defendant has put forth no evidence that it attempted to

comply with the FLSA or that it ever inquired further regarding its FLSA compliance. *See Davila*, 717 F.3d at 1185. Therefore, a reasonable juror could only conclude that Defendant willfully violated the FLSA. Plaintiffs are subject to a three-year statute of limitations for their FLSA claims. *See* 29 U.S.C. § 255(a). Plaintiffs' Motion for Partial Summary Judgment [DE 120-1] regarding the applicable statute of limitations under the FLSA is **GRANTED.**

### 3. Defendant's Liability for Liquidated Damages.

Plaintiffs argue that they are entitled to liquidated damages under the FLSA because Defendant undertook no affirmative steps to ascertain their obligations under the FLSA. [DE 120-1 at 606]. Under the FLSA, "[a]ny employer who violates this statute shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The court may, in its discretion, refuse to award liquidated damages if the employer demonstrates that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Elwell v. Univ. Hosp. Home Care Serv.*, 276 F.3d 832, 840 (6th Cir. 2002) (quoting 29 U.S.C. § 260). Absent this showing of good faith, liquidated damages for violation of the FLSA are mandatory. *See Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3rd Cir. 1991)).

The Defendant did not respond to the Plaintiffs' request for liquidated damages. As noted above, Defendant has conceded any good faith defense by failing to respond. *See Keys*, 2012 WL 2681461, at *7. But the Court will address the merits of Plaintiffs' claim even in the absence of Defendant's response. [DE 124-1]. Defendant has failed to put forth any evidence that it acted in good faith when denying its entertainers minimum wage and overtime. It has also failed to show

16

that it took "affirmative steps to ascertain the [FLSA]'s requirements, but nonetheless violated its provisions." *Martin,* 940 F.2d at 908. Due to the absence of evidence to the contrary, a reasonable juror could only conclude that Defendant failed to act in good faith. Therefore, the Court is required to award Plaintiffs liquidated damages as directed under the FLSA. Plaintiffs' Motion for Partial Summary Judgment [DE 120-1] regarding liquidated damages under the FLSA is **GRANTED.**

### IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Defendant's Motion to Decertify the Class [DE 121-2] is **DENIED**;

2. Plaintiffs' Motion for Partial Summary Judgment [DE 120-1] as to whether they are considered employees under the FLSA is **GRANTED**;

3. Plaintiffs' Motion for Partial Summary Judgment [DE 120-1] regarding the applicable statute of limitations under the FLSA is **GRANTED**;

4. Plaintiffs' Motion for Partial Summary Judgment [DE 120-1] regarding liquidated damages under the FLSA is **GRANTED;**

5. No later than 14 days from the entry of this Order, the parties shall file a proposed scheduling order for resolving any outstanding issues and a status report outlining:

    i. Any remaining discovery;

    ii. Any unresolved issues.

Rebecca Grady Jennings, District Judge
United States District Court

March 14, 2022

Copies to:   Counsel of record

17